CHARLES W. JEFFERSON,

*vs.*

JOHN C. STUCKERT and JAMES I. PADLEY.

*New Castle, Oct.* 14, 1918.

A mortgage of personalty with possession retained by the mortgagor was not valid as against other creditors of the mortgagor until authorized by statute.

A chattel mortgage may be given to secure a debt, or to indemnify, or for both purposes.

In view of the statute providing that a chattel mortgage shall not be valid without an affidavit that it "was made for the bona fide purpose of securing a debt or making indemnity, as the case may be," a mortgage stated to be for securing a debt would not be valid to make indemnity, and vice versa.

In view of the statute providing that a chattel mortgage shall not be valid without an affidavit that it "was made for the bona fide purpose of securing a debt or making indemnity, as the case may be," a mortgage purporting to secure a certain sum then "due and owing," but which in fact was given to secure a debt of much smaller amount and future advances, was invalid as to an execution creditor of mortgagor.

BILL TO HAVE DECLARED INVALID A CHATTEL MORTGAGE. By the admissions of the mortgagor and mortgagee, the chattel mortgage was given, not only to secure a debt which was then owing by the mortgagor to the mortgagee, but also to secure advances of money to be made by the mortgagee to the mortgagor. The mortgage was for $1,000, which by the condition of the mortgage was stated to be "due and owing" at the date thereof, and it was stated in the affidavit made by the parties to it, and made part of it, that the mortgage was made for the bona fide purpose of securing a debt, and was not made to cover the property of the mortgagor, or to protect it from his creditors, or to hinder or delay them in the execution of their debts. The complainant was an execution creditor of the mortgagor, and had levied on the mortgaged property after the mortgage was recorded. Afterwards the property was sold by the sheriff under the execution, and there being a dispute as to the right to the proceeds of sale, the money, amounting to $250, was paid into the Superior Court for New Castle County. But that court declined to decide the question

raised by the parties, and gave the complainant leave to file his bill in the Court of Chancery to ascertain the rights of the parties to the fund.

In his bill the complainant asks that the chattel mortgage be declared to be invalid. Both of the defendants have answered the bill, and it is admitted that the mortgage was given to secure an existing debt and advances to be made, and which were made. They claim that the defendant Stuckert, the mortgagee, had made a binding agreement to make advances up to a certain amount, and that therefore he was protected as to such advances, not having had actual notice of the levy of the execution of the complainant. It was also claimed by the complainant that by the admissions of the answer there was only $62 due the mortgagee at the date of the mortgage, and in any event the mortgagee is not entitled to more than that sum from the money paid into the Superior Court.

The case was heard upon the bill, answer, testimony and exhibits. At the conclusion of the complainant's case the defendants moved to dismiss the bill, but subsequently put in their evidence reserving their rights under the motion to dismiss the bill.

*S. D. Townsend, Jr.*, and *Hugh M. Morris*, for complainant. *Walter J. Willis*, for defendants.

THE CHANCELLOR. In this case the sole question, which it is necessary to decide for the first time in this State so far as reported cases show, is whether a mortgage of personal property which purports to secure only a debt due and owing, but which was also given to secure advances to be made to the mortgagor by the mortgagee, is valid as against an execution creditor of the mortgagor, the levy on the mortgaged property having been made after the recording of the mortgage, though the judgment debt existed before the chattel mortgage was made. It was stated in the condition in the mortgage that the money which the mortgagor was thereby bound to pay the mortgagee was "due and owing" by the former to the latter. Annexed to the mortgage was an affidavit by the parties to the mortgage that it was given to secure a debt, but without stating the amount thereof, or referring to advances.

A mortgage of personalty with possession retained by the mortgagor was not valid as against other creditors of the mortgagor until authorized by statute. In Delaware a valid chattel mortgage may be given to secure a debt, or to make (that is, give) indemnity, or it may be given for both purposes. But the true purpose or purposes must appear in the instrument or affidavit in order to make the mortgage valid. This conclusion is not so stated directly in the statute, but it is a necessary consequence of the provision of it that the mortgage shall not be valid without an affidavit "that the said mortgage was made for the bona fide purpose of securing a debt or making indemnity, as the case may be." It follows, also, that a mortgage stated to be for securing a debt would not be valid to make indemnity, and vice versa; otherwise there would be no meaning to the words used in the Act, and the evident purpose of it would be defeated.

It necessarily follows, also, that a mortgage stated to have been made to secure a debt when there was no indebtedness of the mortgagor to the mortgagee would be invalid, though given to make indemnity, if at the time the mortgage was made there was no contract of indemnity, or if it was really given to secure a debt. This is the effect of the statute independent of any fraudulent intention or purpose, though the deception might be considered evidence of an improper design. Whether this invalidity would result as between mortgagor and mortgagee is here unimportant. It is certainly true, however, that a mortgage which does not state truly the purpose of the instrument is invalid so far as it affects the rights of an execution creditor of the mortgagor.

Inasmuch as in this case the mortgage, though it purports to have been given to secure a debt then due and owing for a certain sum, was in fact given to secure a debt of much smaller amount, and was also given to make indemnity, or as security for future advances, it was under the statute invalid so far as the rights of the execution creditor were affected.

While this is clearly the meaning and effect of the Delaware statute, and so is decisive in this case without looking at the views of courts elsewhere, still it will be found that a similar view has been taken by other courts as to similar statutes of other states respecting chattel mortgages.

In New Jersey the statute declared a chattel mortgage void unless there be an affidavit stating the consideration of mortgage and as nearly as possible the amount due and to grow due thereon. In the case of *Tingley v. International, etc., Co.*, 74 *N. J. Eq.* 538, 70 *Atl.* 919, where the affidavit stated that the consideration was paid by the mortgagee, when in fact it was paid by another person not named, the mortgage was declared to be invalid as to creditors of the mortgagor, though the court found it in fact an honest mortgage. This case was affirmed by the Court of Errors and Appeals in 76 *N. J. Eq.* 337, 75 *Atl.* 1102, without an opinion. Also in the case of *Boice v. Conover*, 54 *N. J. Eq.* 531, 35 *Atl.* 402, the affidavit stated that the consideration of a mortgage made by a firm was a loan to the firm then due and owing, whereas the true consideration was in part a loan to one of the partners individually and in part endorsement of notes of the firm then unmatured. This mortgage was held invalid against creditors, though the instrument was an honest mistake of the mortgagee. Vice Chancellor Emery, as to the claim of an honest mistake said:

"* * * But the question is one of the construction of a statute which defines what the affidavit must contain, and makes no exception or allowance for mistakes. As was said in *Kennard v. Gray*, 58 *N. H.* 51, a case arising on an affidavit under a somewhat similar law, the statue condemns such securities, because their natural tendency is to deceive and defraud creditors, however honest the intention of the parties. And as was held by Mr. Justice Dixon in *Fletcher v. Bonnett*, (*Err. & App.* 1893) 51 *N. J. Eq.* 615, 618, 28 *Atl.* 601, the validity of the chattel mortgage depends on the correctness of the information in the affidavit, and not on the knowledge of the affiant of its truth. Neither, as it seems to me, can the validity of the mortgage depend on the honesty of an affiant in making an affidavit which is substantially untrue." *Boice v. Conover*, 54 *N. J. Eq.* 531, 35 *Atl.* 402, 405.

In *Bollschweiler v. Packer, etc., Co.*, 83 *N. J. Eq.* 459, 91 *Atl.* 1027, Vice Chancellor Emery held invalid a chattel mortgage given to secure notes and also any other sums which might become due under a contract, because the liability on the contract was not mentioned in the affidavit as part of the consideration of the mortgage.

By the Maryland statutes there must be an affidavit that the consideration was true and bona fide. The courts there have decided that if in fact the consideration as stated was untrue,

the mortgage is invalid, independent of actual or intentional fraud. See *Ressmeyer v. Norwood*, 117 *Md.* 320, 83 *Atl.* 347, where the mortgage stated a debt due to the mortgagee from the mortgagor, when in fact the mortgage was given to secure other creditors of the mortgagor. See also *Denton v. Griffith*, 17 Md. 301.

In Vermont the courts have taken the same view of a mortgage which falsely stated the consideration, though the statute simply required a statement in the mortgage of the liability, the court stating that the evident purpose of the act was to afford convenience without an opportunity for fraud. *Tarbell v. Jones*, 56 *Vt.* 312. In *Nichols v. Bingham*, 70 *Vt.* 320, 40 *Atl.* 827, a mortgage purporting to have been made to secure a note from the mortgagor to the mortgagee larger than the actual debt between them, while its real purpose was to secure the true debt and future advances and a liability as endorser, was held invalid as to creditors, and the oath thereto was false in fact.

In *Blandy v. Benedict*, 42 *Ohio St.* 295, by the mortgage it appeared that it was given to indemnify the mortgagee against liability as security for the mortgagor, but the affidavit stated that the mortgage was given to secure payment of a debt of the mortgagor to the mortgagee. It was held invalid against creditors of the mortgagor.

By the statute in New Hampshire no mortgage is valid against any person other than the mortgagor, unless sworn to in the manner prescribed, and if given to indemnify the mortgagee against any liability assumed, such liability shall be stated truly in the mortgage and the affidavit accompanying it must verify this validity, truth and justice of the liability. In *Belknap v. Wendell*, 31 *N. H.* 92, the whole sum secured by the mortgage was described as a debt, when in fact part of it was indemnity. This was decided to be invalid as to creditors of the mortgagor. The case of *Kennard v. Gray*, 58 *N. H.* 51, was to the same effect as to a mortgage purporting to have been given to secure an absolute debt but in fact to secure a collateral note. Such a mortgage was condemned because its natural tendency was to deceive and defraud creditors however honest the intentions of the parties were.

Two cases in New Hampshire are apparently inconsistent with those above mentioned. In the case of *Parker v. Morrison*,

46 *N. H.* 280, it was decided that under the statute a valid mortgage of personal property could not be given a stranger to secure the debt of a third person, and that if given to secure a debt it must be a debt due by the mortgagor to the mortgagee, and if to secure a liability it must be a liability incurred by the mortgagee for the mortgagor. The unreported case of *Richardson v. Blodgett* was cited by the court as authority. There a mortgage had been given to secure a note of the mortgagor to the mortgagee and also to secure a liability which the mortgagee had incurred for the mortgagor by signing a note with him as his surety to a third person, and both were described in the affidavit as debts due from the mortgagor to the mortgagee. This mortgage was held valid to secure the debt due from the mortgagor to the mortgagee, but void as to creditors so far as it was intended to secure the liability incurred. The court in *Parker v. Morrison* evidently used this case solely as authority for the point that a chattel mortgage given for a liability incurred by the mortgagor to a person other than the mortgagee was invalid, and did not necessarily approve the general principle that a mortgage given to secure a debt and a liability would be good as to the debt, although not valid as to the security.

In *Sumner v. Dalton*, 58 *N. H.* 295, however, a mortgage given to secure notes of the mortgagor held by the mortgagee and also to indemnify the mortgagee from loss as indorser of another note of the mortgagor was held to be invalid as to the indemnity but valid as to the notes, as the affidavit stated that the mortgage was given to secure a debt. To support the decision the court cited only *Richardson v. Blodgett*, and saying briefly that the precise question raised had been there decided. There is, therefore, a lack of harmony in the New Hampshire decisions, for if the purpose of the statute as stated by the other New Hampshire cases was to prevent deception of creditors, then a mortgage which purports to be for a debt, but which is for a debt and indemnity certainly tends strongly and almost surely to deceive, or at least mislead creditors of the mortgagor, whether it be so intended, or not. Inasmuch as the very brief opinion in *Sumner v. Dalton* was based on an unreported decision, and is inconsistent with the better reasons given in *Belknap v. Wendell* and *Kennard v. Gray*,

Opinion.

which cases were not referred to, or were ignored, it seems wise to follow these latter cases.

For the complainant it is urged that independent of the statute the mortgage was invalid as to the complainant, because it bore the badge of fraud, being given on its face for money due and owing, with an affidavit that it was given to secure a debt, while in fact it was in part for money due and owing and in part for future advances, which were certainly not then due and owing. To support this the case of *Louden v. Vinton*, 108 *Mich.* 313, 66 *N. W.* 222, and *Butts v. Peacock*, 23 *Wis.* 359, were cited, in neither of which states was there a statute expressly making the validity of a chattel mortgage depend on the making of an affidavit as to the real character of the transaction between the parties to the mortgage. In the case last cited, *Butts v. Peacock*, it was said, as to a mortgage given for a sum greater than was due:

"There are certainly strong reasons for holding such a mortgage fraudulent in law, upon the ground that it necessarily tends to hinder and delay the creditors of the mortgagor. It tends directly to deceive and mislead them, by inducing them to believe that the property is absolutely incumbered to the amount expressed on the face of the mortgage, when in truth it is not so. And it is clear that this might materially hinder them in the enforcement of their claims."

The mortgage in question certainly bore this badge of fraud in a legal sense, independent of the statute, and this fault was greater in that it is shown not to conform to the statutory requirements. A mortgage to secure a debt and future advances is not described in good faith as one given to secure a debt due and owing.

There are some authorities cited for the defendants, which seem to uphold as valid a mortgage given to secure a debt and advances, although the true transaction does not so appear. *Wood v. Weimar*, 104 *U. S.* 793, 26 *L. Ed.* 779; *Monnot v. Ibert*, 33 *Barb.* (*N. Y.*) 24; *Nicklin v. Nelson*, 11 *Ore.* 406, 5 *Pac.* 51, 50 *Am. Rep.* 477. But in those cases and others to the same effect the courts were not construing statutes, but applying general principles. The question in this case is to be solved by the requirements of the statute which invalidates a mortgage unless there be an affidavit

stating whether the mortgage is given to secure a debt, or for indemnity, as the case may be.

It is also argued for the defendants, that a mortgage to secure advances will protect the mortgagee for advances made after an attachment or levy by a junior encumbrancer, if the mortgagee is under a binding obligation to make advances, unless the mortgagee had actual notice of the attachment or levy of the junior encumbrancer before making the advances. This too is quite immaterial in construing the statute.

The conclusion is clear, then, that the Delaware statute evidently intended, as were the statutes of other states, to afford a new convenience in financial transactions, and to give protection to persons other than the parties thereto against deception and possible fraud, by requiring an affidavit as to the real transaction. Therefore, a mortgage given in fact to secure a debt and future advances, but which states that it was for a debt due and owing, must be held invalid as against an execution creditor of the mortgagor. This conclusion is reached as an interpretation of the statute, independent of the good or bad faith of the parties thereto. Such a false statement tends naturally to hinder or delay creditors of the mortgagor in the collection of their debts, as well as to mislead, if not deceive, those not parties to it.

Inasmuch as the mortgage of June 1, 1916, was invalid as to the complainant, he was entitled to priorty of payment from the proceeds of sale of the corn crop paid into the Superior Court, and is entitled to a decree to that effect and for his costs.

Let a decree be entered accordingly.